UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In the Matter of the Arbitration between<br>NEVADA POWER COMPANY,<br><br>Claimant,<br><br>and<br><br>RELIANT ENERGY SERVICES, INC.,<br><br>Respondent,<br><br>American Arbitration Association,<br>Case No. 79 Y 198 00151 03 VSS | CIVIL ACTION NO. 04-MC-10181 (JLT) |

## OPPOSITION OF NON-PARTIES ANALYSIS GROUP, INC. AND MICHAEL QUINN TO RELIANT ENERGY SERVICES, INC.'S MOTION TO COMPEL

Non-parties Analysis Group, Inc. ("AGI") and its employee Michael Quinn ("Quinn") respectfully submit this Opposition to the Motion to Compel filed by Reliant Energy Services, Inc. ("Reliant").

### FACTUAL BACKGROUND

In an arbitration currently pending before the American Arbitration Association ("AAA"), Nevada Power Company alleges that Reliant engaged in manipulative and fraudulent conduct in natural gas transactions during the California energy crisis of 2000 and 2001. The gas trading practices of Reliant and other energy companies were among the subjects of a report issued on March 26, 2003 by the Federal Energy Regulatory Commission ("FERC") entitled "Final Report on Price Manipulation in Western Markets" (the "FERC Report"). Chapter II of the FERC Report was devoted to an investigation of Reliant's gas purchasing and selling activities in southern California. AGI, an economic, financial and strategy consulting firm with

offices in, among other places, Boston, Massachusetts, assisted FERC in researching and preparing Chapter II of the FERC Report. Prior to working on the FERC project, AGI agreed to keep confidential the information and documents AGI reviewed and prepared in connection with its work on the FERC Report and not to disclose such information or documents to anyone without FERC's permission.[1]

After publication of the FERC Report, Reliant submitted a Freedom of Information Act ("FOIA") request to FERC in which Reliant sought documents related to the FERC Report. FERC objected to production of certain documents requested by Reliant on the grounds that the documents were subject to the deliberative process privilege, which "shelters documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *National Ass'n of Home Builders v. Norton*, 309 F.3d 26, 39 (D.C. Cir. 2002).

On May 12, 2004, Reliant filed a lawsuit in which it seeks to compel FERC to comply with the FOIA request.[2] To ensure that it had all materials that might theoretically be responsive to Reliant's FOIA request, FERC directed AGI to provide FERC with all documents related to AGI's work on the FERC Report, so that FERC could consider whether to produce those documents in the FOIA lawsuit. AGI has complied with that directive.[3] The FOIA Litigation is currently pending in federal district court in Washington, D.C. before the Honorable Paul L. Friedman. In the FOIA Litigation, FERC contends, among other things, that the deliberative

---

[1]    *See* Affidavit of Michael Quinn ("Quinn Aff.") ¶ 3, attached hereto as Exhibit A.

[2]    *See Reliant Energy Power Generation, Inc. and Reliant Energy Services, Inc. v. Federal Energy Regulatory Commission*, Docket No. 04-CV-0774 (D.D.C.) (the "FOIA Litigation"). A true and correct copy of the Complaint filed by Reliant in the FOIA Litigation is attached hereto as Ex. B.

[3]    *See* Quinn Aff. ¶ 5.

process privilege protects from disclosure certain documents reviewed or prepared by AGI at FERC's direction.

On May 13, 2004 – one day after Reliant filed its Complaint in the FOIA Litigation – Reliant served a subpoena upon AGI and Quinn in the above-captioned arbitration. Like Reliant's FOIA request to FERC, the subpoena essentially seeks all documents in AGI's possession related to the FERC Report.[4] Even though AGI has provided to FERC all of the documents in its possession related to its work on the FERC Report, and even though Reliant is seeking those same documents in the FOIA Litigation, Reliant filed a Motion to Compel (the "Motion") in this matter.

ARGUMENT

**I.     Reliant's Motion should be denied and its subpoena quashed because the discovery Reliant seeks is unreasonably cumulative and is obtainable from some other source that is more convenient and less burdensome.**

Rule 26(c) of the Federal Rules of Civil Procedure provides that the Court may order that discovery "not be had" where necessary to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." Similarly, Rule 26(b)(2) protects a party from discovery that is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." These concerns regarding the burdensome and cumulative nature of discovery are heightened where the entity from which discovery is sought is not even a party to the litigation. *See, e.g., Cusumano v. Microsoft Corp.,* 162 F.3d 708, 717 (1st Cir. 1998) ("Although discovery is by definition invasive, parties to a lawsuit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.").

---

[4]     A true and correct copy of Reliant's subpoena to AGI is attached hereto as Ex. C.

Reliant's Motion should be denied and its subpoena quashed because the documents at issue here are the very same documents sought by Reliant in the FOIA Litigation. As a result, Reliant's subpoena is "unreasonably cumulative or duplicative" and seeks documents that are "obtainable from some other source that is more convenient [and] less burdensome." *See* Fed. R. Civ. P. 26(b)(2). AGI – which is a party to neither the FOIA Litigation nor the above-captioned arbitration – has already provided to FERC all of the documents in its possession related to the work it performed for FERC, and Reliant has filed the FOIA Litigation in an attempt to gain access to those documents. Dragging AGI into this dispute is completely unnecessary and would place an undue burden and expense on AGI. At the same time, forcing Reliant to seek the documents directly from FERC in the FOIA Litigation makes perfect sense because the documents at issue belong to FERC, not AGI, which agreed not to release the documents without FERC's permission.

## II.    Allowing Reliant's Motion would eviscerate FERC's deliberative process privilege.

Reliant's Motion not only seeks duplicative discovery, but it also seeks to complete an end run around FERC's deliberative process privilege. The documents Reliant seeks from AGI include advisory opinions and recommendations that AGI prepared at FERC's direction. As a result, the documents at issue appear to be subject to FERC's deliberative process privilege because they "compris[e] part of a process by which governmental decisions and policies are formulated." *National Ass'n of Home Builders v. Norton*, 309 F.3d 26, 39 (D.C. Cir. 2002). Judge Friedman is already considering FERC and Reliant's arguments regarding the privilege in the FOIA Litigation. If this Court were to allow Reliant's Motion, it would completely eviscerate FERC's deliberative process privilege before Judge Friedman has ruled on that issue in the previously-filed FOIA Litigation. Allowing Reliant's Motion may also lead to

inconsistent results if Judge Friedman were later to decide that the deliberative process privilege

does indeed prevent Reliant from obtaining the documents it seeks in this matter.

## CONCLUSION

For the foregoing reasons, AGI and Quinn respectfully request that the Court deny

Reliant's Motion to Compel and quash the subpoena Reliant has served upon AGI and Quinn.

Respectfully submitted,

**ANALYSIS GROUP, INC.**

By their attorneys,

Paul D. Wilson, BBO # 529950
Matthew C. Hurley, BBO # 643638
MINTZ, LEVIN, COHN, FERRIS,
 GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000

Dated:  July 12, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of July, 2004, I caused the foregoing *Non-Parties Analysis Group, Inc. and Michael Quinn's Opposition to Reliant Energy Services, Inc.'s Motion to Compel* to be served by fax and first class mail on the following:

> Steven R. Hunsicker
> BAKER BOTTS LLP
> 1299 Pennsylvania Ave., N.W.
> Washington, D.C. 20004-2400

Matthew C. Hurley

LIT 1468012v2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

In the Matter of the Arbitration between )
NEVADA POWER COMPANY, )
 )
 )
Claimant, )
 )
and ) CIVIL ACTION NO. 04-MC-10181 (JLT)
 )
RELIANT ENERGY SERVICES, INC., )
 )
Respondent, )
 )
American Arbitration Association, )
Case No. 79 Y 198 00151 03 VSS )
 )

## AFFIDAVIT OF MICHAEL QUINN

I, Michael Quinn, hereby depose and state as follows:

1.      I work for Analysis Group, Inc. ("AGI"), a consulting firm specializing in economic and financial analysis.  AGI has offices in, among other places, Boston.

2.      In 2002, the Federal Energy Regulatory Commission ("FERC") retained AGI and me to analyze the energy markets in the western part of the United States during 2000-01.  Along with others at AGI, I assisted FERC in researching and preparing a report issued by FERC on March 26, 2003 entitled "Final Report on Price Manipulation in Western Markets" (the "FERC Report").

3.      Prior to working on the FERC project, AGI agreed to keep confidential the information and documents AGI reviewed and prepared in connection with its work on the FERC Report and not to disclose such information or documents to anyone without FERC's permission.

**EXHIBIT**

*A*

4.      I understand that after the FERC Report was published, Reliant submitted a Freedom of Information Act ("FOIA") request to FERC in which Reliant sought documents related to the FERC Report.  I also understand that FERC objected to production of certain documents requested by Reliant.

5.      In May 2004, FERC directed AGI to provide FERC with all documents related to AGI's work on the relevant FERC contract.  AGI has complied with that directive.

Signed under the pains and penalties of perjury this 12th day of July, 2004.


Michael Quinn

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RELIANT ENERGY POWER GENERATION, INC.  )
Reliant Energy Plaza                   )
1111 Louisiana                         )
Houston, Texas 77002                   )
                                       )
        - and -                        )
                                       )
RELIANT ENERGY SERVICES, INC.          )
Reliant Energy Plaza                   )
1111 Louisiana                         )
Houston, Texas 77002                   )
                                       )
        Plaintiffs                     )
                                       )
        v.                             )
                                       )
FEDERAL ENERGY REGULATORY COMMISSION   )
888 First Street, N.E.                 )
Washington, D.C. 20426                 )
                                       )
        Defendant.                     )

CASE NUMBER  1:04CV00774

JUDGE: Paul L. Friedman

DECK TYPE: FOIA/Privacy Act

DATE STAMP: 05/13/2004

Civil Action No. _____

## COMPLAINT FOR DECLARATORY
## AND INJUNCTIVE RELIEF

### NATURE OF THE ACTION

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C.
§ 552, *et seq.*, seeking the review of this Court to order the immediate production of certain
documents within the possession or control of the Federal Energy Regulatory Commission
("FERC").

2.      The documents sought by Plaintiffs pertain to a published report prepared by the
staff of the Federal Energy Regulatory Commission ("FERC Staff Report") that contains

DC01:371580.4

EXHIBIT
**B**

erroneous allegations, statements and conclusions concerning Plaintiffs' natural gas purchasing and selling activities in the western United States. The erroneous allegations included in the FERC Staff Report have prompted the filing of multiple legal actions against the Plaintiffs, including multiple consumer class action lawsuits alleging Reliant's conduct artificially increased the price of natural gas over a billion dollars. Although these lawsuits are baseless, they will be extremely costly to defend, in large part because they rely, in part, on allegations that have the imprimatur of appearing in a FERC Staff Report. Despite the harmful allegations made by the FERC Staff Report, FERC has improperly withheld workpapers and factual analyses that underlie the report, and has thereby denied Plaintiffs their rights to be apprised of the factual material on which the FERC Staff Report is based, and frustrated Plaintiffs' ability to meet and rebut the allegations, statements and conclusions included in the FERC Staff Report.

3.     This Court has jurisdiction over these claims pursuant to 5 U.S.C. § 522(a)(4)(B) and 28 U.S.C. § 1331.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1391(c).

## PARTIES

5.     Reliant Energy Power Generation, Inc. ("REPG") has its principal place of business in Houston Texas, and is a wholly-owned subsidiary of Reliant Energy, Inc. ("Reliant Energy"). REPG, through its wholly-owned indirect subsidiaries, Reliant Energy Coolwater, Inc., Reliant Energy Ellwood, Inc., Reliant Energy Etiwanda, Inc., Reliant Energy Mandalay, Inc. and Reliant Energy Ormond Beach, Inc., owns generating facilities that were acquired from Southern California Edison Company as part of California's electricity market restructuring

process. Through these affiliates, REPG is an active participant in the California wholesale electricity markets.

     6.     Reliant Energy Services, Inc. ("RES") has its principal place of business in Houston, Texas, and is a wholly-owned subsidiary of Reliant Energy, Inc. RES is a power marketer engaged in the sale of natural gas and electric energy and capacity nationwide. RES participates actively as a seller in wholesale electricity markets and also serves as scheduling coordinator for its affiliates.

     7.     REPG and RES are referred to collectively as "Reliant."

     8.     Defendant Federal Energy Regulatory Commission is an agency of the United States located in the District of Columbia.

## FACTS

     9.     On February 13, 2002, Defendant FERC issued an "Order Directing Staff Investigation" in FERC Docket No. PA02-2-000, "Fact-Finding Investigation of Potential Manipulation of Electric and Natural Gas Prices." The Order is published at 98 FERC ¶ 61,165 (CCH) (2000). By this Order, FERC directed its Staff:

> to undertake a fact-finding investigation into whether any entity
> ... manipulated short-term prices in electric energy or natural gas
> markets in the West or otherwise exercised undue influence over
> wholesale prices in the West, for the period January 1, 2000
> forward. Staff will also look into other factors that may have
> influenced contract terms. In conducting this broad investigation,
> the Commission staff may obtain information on any and all
> matters relevant to potential market manipulation in the West,
> including comparative information from other markets in the
> country.

*Id.* at p. 61,614.

     In order to conduct Staff's fact-finding investigation, the FERC empowered its General Counsel or her designee:

> to administer oaths and affirmations; subpoena witnesses; compel
> their attendance and testimony; take evidence, compel the filing of
> special reports and interrogatories; gather information; require the
> production of any books, papers, correspondence, memoranda,
> contracts, agreements or other records; perform all other duties in
> connection with this investigation as prescribed by law; and
> designate other staff members of the Commission as officers of the
> Commission with all the powers enumerated in this order.

*Id.* at p. 61,615

10.  On March 26, 2003, the FERC Staff published its "Final Report on Price
Manipulation In Western Markets" in FERC Docket No. PA02-2-000. The FERC Staff Report
states that "Staff found significant market manipulation" and concludes, *inter alia,* that "markets
for natural gas and electricity in California are inextricably linked, and that dysfunctions in each
fed off one another during the crisis." FERC Staff Report at ES-1, *available at*
*http://www.ferc.gov/legal/ferc-regs/land-docs/Part-J-3-26-03.pdf.*

11.  Chapter II of the FERC Staff Report was devoted to an investigation of RES' gas
purchasing and selling activities in southern California at points of interconnection between
interstate pipeline facilities that connect natural gas production areas in the southwestern United
States with natural gas distribution facilities that serve Reliant's natural gas fueled electric power
generation plants in California. The investigation focused primarily on spot gas transactions at
fixed prices that took place at the Topock, Arizona, entry point into the Southern California Gas
Company natural gas distribution system in southern California. The investigation was
conducted by FERC Staff with the assistance of outside contractors, including economic and
econometric experts retained by FERC. FERC Staff Report at II-2.

12.  Chapter II of the FERC Staff Report concludes in part that RES "engaged in a
high-volume, rapid-fire trading strategy to purchase its physical spot gas needs ... [and that
Reliant] often bought and sold many times its needs in quick bursts." FERC Staff Report at II-1.

The FERC Staff Report describes RES' so-called "high-volume, rapid-fire trading strategy" as "churning." *Id.*

13.     Chapter II of the FERC Staff Report includes specific, unqualified statements describing several analyses purporting to show that RES' so-called "churning" increased market prices for natural gas. The FERC Staff Report also purports to calculate the impact of allegedly inflated natural gas prices on electric power prices in California, due to the effect of the cost of natural gas fuel used in gas-fired power generation units.

14.     As a result of the publication of the prejudicial findings, statements and conclusions in Chapter II of the FERC Staff Report, Reliant has been threatened with substantial harm in the form of several third-party legal actions, including class-action lawsuits. These lawsuits are based on, and indeed quote from, Chapter II of the FERC Staff Report as support for claims to recover from Reliant as much as $2.75 billion of increased gas and power costs in western markets.

15.     Reliant has refuted the above-referenced allegations in Chapter II of the FERC Staff Report. On May 9, 2003, Reliant submitted a Memorandum of Fact and Law in Response to Chapter II of the FERC Staff Report in FERC Docket No. PA02-2-000. In this filing, Reliant submitted substantial countervailing evidence and alternative analyses to refute many of the allegations, findings and conclusions of Chapter II of the FERC Staff Report.

16.     Reliant's defense of its gas purchasing activity emphasized that its corporate objective was to ensure sufficient gas supply to fuel its power generation plants in California at the lowest possible price, that as a net purchaser of natural gas Reliant had no incentive to improperly increase gas prices, and that Reliant's trading activities were legal under FERC's regulations. The FERC has accepted important elements of Reliant's defense. On October 2,

2003, FERC issued an Order Approving Stipulation and Consent Agreement in Reliant Energy

Services, Inc., *et al.*, FERC Docket Nos. EL03-59-000, *et al.* This Order is published at *Reliant*

*Energy Services, Inc.*, 105 FERC ¶ 61,008 (CCH) (2003). The Stipulation and Consent

Agreement entered into by and between Reliant and the Staff of the FERC Division of

Enforcement, Office of Market Oversight and Investigations includes the following stipulations:

11.   In Chapter II of the Final Report, there are allegations that Reliant's gas trading at Topock contributed to the increased price of natural gas in California. As the Final Report notes, the trading activity of Reliant's gas buyer was not prohibited by the Commission's regulations. *See* Final Report at II-61.

12.   Reliant submitted a Supplement to Request for Rehearing and Request for Clarification or, in the Alternative, Request for Rehearing, in Docket Nos. EL00-95-045, et al., on April 25, 2003, and a Memorandum of Fact and Law in Response to Chapter II of the Final Report, in Docket No. PA02-2-000, on May 9, 2003.

13.   The investigation in Docket No. PA-2-2-000 found no evidence that Reliant or its gas trader intended to manipulate gas prices. Reliant's trading activity was an attempt to obtain gas at the lowest possible price.

17.   Despite the above-referenced stipulations between Reliant and FERC Staff,

Reliant still faces the significant burden of defending the several actions that were prompted by

and based on the erroneous allegations, findings and conclusions included in Chapter II of the

FERC Staff Report. Consequently, Reliant continues to require the data and workpapers that

underlie or relate to the allegations and findings included in Chapter II of the FERC Staff Report

on which the actions are premised. Simply stated, without access to these workpapers and data,

Reliant will be seriously hampered in rebutting specific findings and allegations on which these

lawsuits are based.

DC01:371580.4                                    6

18.     On April 21, 2003, counsel for Reliant filed a request for information under the FOIA by which Reliant sought copies of the documents relied upon by the Staff of the FERC in the preparation of Chapter II of the FERC Staff Report. More specifically, Reliant sought "copies of the workpapers, input data and other documents that comprise or explain the 'econometric analysis' relating to or underlying Staff's conclusion in preparing Chapter II of the Staff Report, and Appendices thereto, and/or that support or explain the purported showing of the 'econometric analysis of the effect of Reliant's trading on market prices.'" A true and correct copy of Reliant's FOIA request is attached as Exhibit "A" to this Complaint.

19.     On May 23, 2003, FERC's Director of Office of External Affairs responded to Reliant's April 21, 2003, FOIA request. The response stated, *inter alia*:

> Any workpapers responsive to your request that are not publicly available are being withheld pursuant to FOIA Exception 5, which protects from disclosure 'inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.' 5 U.S.C. § 552(b)(5). Exemption 5 encompasses the deliberative process. The working papers that you seek led to the preparation of the Commission staff's Final Report on Price Manipulation in Western Markets. These internal working papers contain opinions and policy recommendation's [sic], which may be withheld under Exemption 5 ... The workpapers that are not publicly available are of a deliberative nature, and are therefore being withheld pursuant to FOIA Exemption 5.

(Citation omitted). A true and correct copy of the May 23, 2003 response to Reliant's FOIA request is attached as Exhibit "B" to this Complaint.

20.     On July 7, 2003, pursuant to 5 U.S.C. § 552, and Section 388.110 of the FERC's FOIA regulations, 18 C.F.R. § 388.110, counsel for Reliant appealed the May 23, 2003 denial of information sought by Reliant's April 21, 2003 FOIA request. Among other things, Reliant's appeal stressed that under applicable authority, memoranda or workpapers consisting of factual information, as opposed to officials' opinions or policy recommendations, must be disclosed and

that factual material contained in deliberative memoranda that is severable without compromising the private remainder of the documents must be disclosed. A true and correct copy of Reliant's appeal of the denial of its April 21, 2003 FOIA request is attached as Exhibit "C" to this Complaint.

21.    On August 13, 2003, FERC's General Counsel denied in its entirety Reliant's July 7, 2003 appeal of the withholding of documents responsive to Reliant's April 21, 2003 FOIA request. In her letter denying Reliant's appeal, FERC's General Counsel acknowledged that withheld workpapers reflected "other ways, besides the final way, of manipulating the deliverables or raw data that are reflected in the [Final Report]." A true and correct copy of the FERC General Counsel's denial of Reliant's FOIA appeal is attached as Exhibit "D" to this Complaint.

22.    On August 28, 2003, FERC's General Counsel provided a "follow-up" to the August 13, 2003 denial of Reliant's FOIA appeal. The General Counsel's August 28, 2003 letter indicates that "other methods of analysis" are reflected in withheld workpapers, which were described as earlier drafts of Chapter II of the FERC Staff Report. The August 28, 2003 letter also states that FERC has no other documents that are responsive to Reliant's FOIA request:

> [W]ith the exception of certain analyses and data that are already publicly available, the varying econometric analyses performed or considered in connection with Chapter II were performed electronically on an interactive basis, and were not preserved in any form, printed or electronic. In particular, the sensitivity analyses performed to gauge the robustness of the empirical analysis were performed at the keyboard in real time. The Commission did not maintain in any form, electronically or otherwise, any analysis that was not adopted in the final report.

23.    The General Counsel's August 28, 2003 letter does not establish whether or not the withheld workpapers include factual material that is segregable from opinion or policy material that is properly exempt under 5 U.S.C. § 552(b)(b). Nor does the August 28, 2003 letter

establish whether factual materials remain in the possession of outside contractors retained by FERC to assist with the econometric investigation and analysis that are the subject of Chapter II of the FERC Staff Report. Such materials are within the possession or control of the FERC, whether or not they are in the possession of FERC itself, and are therefore subject to disclosure in response to Reliant's FOIA request.

24.    In at least one proceeding now before the America Arbitration Association, *Sierra Pacific Resources and Nevada Power Company v. Reliant Energy Services, Inc., Arbitration Matter: 79Y 198 00151 03 VSS*, Claimants have retained as experts some of the same economic consultants that FERC hired as contractors to assist with the preparation of Chapter II of the FERC Staff Report. The claims against Reliant in this proceeding rest almost entirely on the erroneous conclusions regarding RES' natural gas trading contained in Chapter II of the FERC Staff Report. The consultants retained first by FERC and now by Claimants in the referenced arbitration have taken the position that they will not produce any workpapers, computer models and/or other materials developed in connection with the preparation of Chapter II of the FERC Staff Report because the consultants' agreement with FERC requires the consultants to keep such information confidential. The Claimants in that proceeding further state that decisions regarding the release of these materials must be made by FERC. This information is highly relevant to defending Reliant's interests in pending actions that are premised on Chapter II of the FERC Staff Report, including the arbitration in which FERC's consultants have peddled their work and experience gained preparing the FERC Staff Report to a private claimant. Among other things, the consultants are believed to have performed calculations of gas demand on a disaggregated basis to determine whether increases in California gas prices are explainable in terms of fundamental gas demand factors, as Reliant contends, rather than by RES' so-called

"churning" of gas trades as erroneously indicated by Chapter II of the final FERC Staff Report. Whether or not such materials are properly withheld by the consultants in the arbitration, the materials are within the possession or control of FERC, as the consultants acknowledge, and are subject to disclosure in response to Reliant's FOIA request.

**COUNT I**
**VIOLATION OF FREEDOM OF INFORMATION ACT**
**5 U.S.C. § 552, *et seq.***

25.    Reliant incorporates paragraphs 1-24 as if restated here in full.

26.    The FERC has wrongfully withheld disclosure of workpapers that are not publicly available as protected from disclosure pursuant to FOIA Exemption 5 under an overly expansive claim of the deliberative process privilege. FERC's claim that the withheld materials "are of a deliberative nature" is insufficient to justify the complete denial of the requested disclosure. The FERC has not provided a "Vaughn Index", pursuant to *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974), or otherwise demonstrated that the requested materials constitute deliberative opinions or policy recommendations properly protected from disclosure under FOIA Exemption 5, as opposed to factual investigative information that must be disclosed. Similarly, FERC has not shown that requested factual material in deliberative documents cannot be severed and disclosed without compromising the remainder of the deliberative documents. In addition, FERC has not shown that it has endeavored to identify and disclose responsive materials within the possession of outside contractors retained to assist FERC Staff with the factual, economic and econometric analyses that purport to underlie the findings and conclusions of Chapter II of the FERC Staff Report.

27.    The FERC has improperly withheld documents from Reliant pursuant to the purported application of FOIA Exemption 5 and has failed to provide a document-specific explanation for each such withholding pursuant to 5 U.S.C. § 552(a)(6)(A).

DC01:371580.5                                10

## PRAYER FOR RELIEF

WHEREFORE, Reliant asks that this Court:

(1)    Declare that FERC is subject to the FOIA and that FERC's withholding of the material sought by Reliant's FOIA request is unlawful under the FOIA;

(2)    Order FERC to make the materials sought by Reliant's FOIA request available to Reliant;

(3)    Award Reliant its costs, reasonable attorneys' fees, and other disbursements in this action; and

(4)    Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Michael L. Jines
Reliant Energy Power Generation, Inc.
1111 Louisiana
Houston, Texas 77208
(713) 207-7465

Steven R. Hunsicker
D.C. Bar No. 931683
Benjamin E. Kringer
Jette G. Stoermer
Baker Botts L.L.P.
The Warner
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
(202) 639-7700

Counsel for
Reliant Energy Power Generation, Inc. and
Reliant Energy Services, Inc.

Dated: May 12, 2004

DC01:371580.4                    11

# The Arbitration Tribunals of the
# American Arbitration Association

In the Matter of the Arbitration between:

NEVADA POWER COMPANY,
        Claimant,

and

RELIANT ENERGY SERVICES, INC.,
        Respondent.

Case No. 79 Y 198 00151 03 VSS

**Subpoena Duces Tecum
(Documents)**

FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

TO:                   Michael Quinn and Analysis Group, Inc.
                   111 Huntington Ave., Boston, MA  02199

GREETING:

    WE COMMAND YOU that, all business and excuses being laid aside, you and each of you produce for inspection and copying certain

             documents, as described in the attachment to this subpoena,

now in your custody.

    PRODUCTION IS REQUIRED at

Esquire Deposition Services, 175 Federal St., Suite 508, Boston, MA  02110, Attn: Amy Etheridge
                            (address)

on or before the ___24th___ day of ___May___, 2004, at 5:00 P.M.

                   Signed: _____

                   Signed: _____
                           Arbitrator(s)

Requested by: Reliant Energy Services, Inc.
by and through its attorney of record
J. Gregory Copeland, Baker Botts LLP
           Name of Representative
910 Louisiana St., Houston, Texas 77002
              Address
713-229-1234
            Telephone
Dated: _May 10, 2004_

**EXHIBIT
C**

# The Arbitration Tribunals of the
# American Arbitration Association

In the Matter of the Arbitration between:                    Case No. 79 Y 198 00151 03 VSS

NEVADA POWER COMPANY,
        Claimant,                                                     **Subpoena Duces Tecum**
                                                                           **(Documents)**

and

RELIANT ENERGY SERVICES, INC.,
        Respondent.

FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

TO:                  Michael Quinn and Analysis Group, Inc.
                  111 Huntington Ave., Boston, MA 02199

GREETING:

    WE COMMAND YOU that, all business and excuses being laid aside, you and each of you produce
for inspection and copying certain

                documents, as described in the attachment to this subpoena,

now in your custody.

    PRODUCTION IS REQUIRED at

Esquire Deposition Services, 175 Federal St., Suite 508, Boston, MA 02110, Attn: Amy Etheridge
                              (address)

on or before the   24th   day of   May  , 2004, at 5:00 P.M.

                    Signed: _____

                    Signed: _____ (Robert Wax)
                                Arbitrator(s)

Requested by: Reliant Energy Services, Inc.
by and through its attorney of record
J. Gregory Copeland, Baker Botts LLP
          Name of Representative
910 Louisiana St., Houston, Texas 77002
             Address
713-229-1234
          Telephone
Dated: May 10, 2004

HOU01:836118.1

**Attachment**

**Description of Documents to be Produced**

## Instructions and Definitions

"You" refers to Michael Quinn, the Analysis Group, Inc., and any employees, agents and/or representatives of the Analysis Group, Inc.

"Workpapers" refers to all documents, models, spreadsheets, databases, analyses, opinions, reports, findings, or conclusions collected, reviewed or generated by you in conjunction with the work you performed under Contract No. FERC02-OED-22312 with the Federal Energy Regulatory Commission ("FERC"), regarding the Investigation of Potential Manipulation of Electric and Gas Prices, PA02-2-000.

"Final Report" refers to the Final Report on Price Manipulation in Western Markets, Fact-Finding Investigation of Potential Manipulation of Electric and Gas Prices, Docket No. PA02-2-000 (March 2003).

"Documents" refers to all agreements; communications; transcripts; reports; correspondence; telegraphs or telegrams; cables; telexes; memoranda; records; books; summaries; notes or records of personal conversations, interviews or meetings; diaries; graphs; charts; computer records; e-mail; computer software; computer disks; diagrams; notebooks; notecharts; studies; drafts; letters; working papers; and any information contained in any computer or information-retrieval devices.

Identical copies of the requested documents may be produced in lieu of the originals.

Documents that are originally in paper format may be produced in electronic form.

Documents that are originally in electronic format must be produced in an identical electronic form.

## Documents to be Produced

1.  All Workpapers related in any way to the matters described in Chapter II of the Final Report.

2.  All data that You collected utilized, analyzed, reviewed or relied upon in any way in generating the Workpapers responsive to Item No. 1 above.

3.  All Documents provided to You by FERC or any other party in connection with work related to the Final Report.

4.  Any other Documents that you generated that reflect or relate in any way to the Final Report.